1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   BOARDS OF TRUSTEES OF THE SHEET
    METAL WORKERS PENSION TRUST OF
8   NORTHERN CALIFORNIA, et al.,

9              Plaintiffs,

10        v.

11  CER MECHANICAL CORPORATION,

12             Defendant.

Case No.  20-cv-03462-WHO

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 23

13

14        Before me is plaintiffs' motion for default judgment seeking to collect unpaid

15  contributions, liquidated damages, interest on unpaid or delinquent contributions, and attorneys'

16  fees and costs.[1]  Defendant CER Mechanical Corporation ("CER") has not appeared in this case

17  and no opposition to the motion has been filed.  I find this motion is suitable for decision without

18  oral argument and VACATE the hearing scheduled for April 14, 2021.  *See* Civ. L. R. 7-1(b).

19  Plaintiffs satisfy the standard for default judgment and demonstrate that the requested relief is

20  appropriate.  Their motion for default judgment is GRANTED.

21                              **BACKGROUND**

22        The Sheet Metal Workers Pension Trust of Northern California, Sheet Metal Workers

23  Local 104 Health Care Trust, Sheet Metal Workers Local 104 Supplemental Pension Fund, Sheet

24  Metal Workers Local 104 Vacation-Holiday Savings Fund, and Sheet Metal Workers Local 104

25

26  ───────────────
    [1] Plaintiffs are Boards of Trustees of the Sheet Metal Workers Pension Trust of Northern
27  California, Sheet Metal Workers Local 104 Health Care Trust, Sheet Metal Workers Local 104
    Supplemental Pension Fund, Sheet Metal Workers Local 104 Vacation-Holiday Savings Fund,
28  Sheet Metal Workers Local 104 And Bay Area Industry Training Fund, Trustee Rick Werner and
    Trustee Sean O'Donoghue.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and Bay Area Industry Training Fund, are employee benefit plans as defined in the Employee

2    Retirement Income Security Act of 1974 ("ERISA") § 3(3), 29 U.S.C. § 1002(3) and are multi-

3    employer plans as defined by ERISA § 3(37)(A), 29 U.S.C. §1002(37)(A).  Complaint ("Compl.")

4    [Dkt. No. 1] ¶ 1.  The Boards of Trustees of the Sheet Metal Workers are the named fiduciaries of

5    plaintiffs' Trust Funds under ERISA §402(a), 29 U.S.C. §1002(a).  *Id.*  Rick Werner and Sean

6    O'Donoghue are Trustees of the Trust Funds with authority to act on behalf of all Trustees.  *Id.*

7           According to the Sheet Metal Workers International Association Local Union No. 104's

8    ("Union") records, CER is a signatory to and bound by the terms of the Standard Form of Union

9    Agreement ("Bargaining Agreement") between the Union and the Sheet Metal and Air

10   Conditioning Contractors National Association's ("SMACNA") Bay Area Chapter.  *Id.* ¶ 9.  The

11   Bargaining Agreement incorporates the terms of the Trust Agreements establishing the Trust

12   Funds.  *Id.*; Declaration of R. Werner in Support of Motion for Default Judgment ("Werner

13   Decl.") [Dkt. No. 26], Ex. A (Bargaining Agreement) at Addendum No. 1, Item 5, Section F

14   (incorporating the terms of the Trust Agreements into the Bargaining Agreement); *id.*, Ex. D

15   (Trust Agreements).  The Bargaining and Trust Agreements require CER to make payment of

16   employer contributions to plaintiffs' ERISA Trust Funds, to the Union for union dues, and to the

17   other plans more fully described in the Bargaining Agreement, based on the hours worked by

18   CER's employees.  Werner Decl. ¶ 8.  Plaintiffs are third-party beneficiaries of the Bargaining

19   Agreement, which authorizes plaintiffs' Boards of Trustees to collect and distribute the

20   contributions due under the Bargaining Agreement.  Compl. ¶ 10.  The Board of Trustees are also

21   authorized to establish Collection Procedure Guidelines to set rules and regulations as may be

22   necessary in the administration of the Trusts.  *See* Trust Agreement at sections III.E and V.D.2;

23   Werner Decl., Ex. E (Collection Procedure Guidelines).

24          Under the Bargaining and Trust Agreements, contributions are due on the twenty-second

25   (22nd) day of the month following the month during which hours were worked and are considered

26   delinquent if not received by that day.  Compl. ¶ 11; Trust Agreement at section III.D; Collection

27   Procedure Guidelines at section II.C.  The Bargaining and Trust Agreements require CER to pay

28   liquidated damages and interests on delinquent contributions.  Liquidated damages are calculated

1    at five percent (5%) of the delinquent contributions or $100.00, whichever is greater, plus ten

2    percent (10%) interest per annum, calculated from the day contributions become delinquent until

3    paid.  Trust Agreement at sections III.D and III.F; Collection Procedure Guidelines at section II.C;

4    Declaration of S. Guzman in Support of Motion for Default Judgment ("Guzman Decl.") [Dkt.

5    No. 25] ¶ 6.

6         If contributions are not received by the fifteenth (15th) day of the month following the

7    month in which they were due, the matter is referred to collection counsel.  If contributions are not

8    paid by the twenty-second (22nd) day of the month following the month in which they were due,

9    liquidated damages increase to twenty percent (20%) of the delinquent contributions, plus ten

10   percent (10%) interest per annum, calculated from the day contributions become delinquent until

11   paid.  *See* Trust Agreement at sections III.D and III.F; Collection Procedure Guidelines at section

12   II.C.  Guzman Decl. ¶ 6.  The Bargaining and Trust Agreements also require CER to reimburse for

13   the reasonable attorneys' fees and costs incurred in connection with the collection of delinquent

14   contributions.  *See* Trust Agreement at section III.G; Collection Procedure Guidelines at section

15   II.D.

16        On May 12, 2020, plaintiffs filed the Complaint, alleging that that CER failed and refused

17   to pay contributions for hours worked by its employees for the months of October 2018 and

18   November 2018 and also failed and refused to pay liquidated damages and interest incurred on its

19   late-paid contributions for the month of December 2018.  Compl. ¶¶ 13–14.  They seek to recover

20   unpaid contributions and all liquidated damages and interest on the delinquent or unpaid

21   contributions.  *Id.* ¶ 15.  The Complaint and summons were served on CER by substitute service

22   on August 13, 2020.  Proof of Service [Dkt. No. 13]; *see* Cal. Civ. Proc. Code § 415.20(a).  On

23   October 15, 2020, the Clerk of the Court entered default against CER.  Entry of Default [Dkt. No.

24   16].

25        On March 5, 2021, plaintiffs filed their motion for default judgment, seeking $33,512.82 in

26   unpaid contributions, liquidated damages and interest for the unpaid contributions in October 2018

27   and November 2018, as well as $100.15 in liquidated damages and interest for the late-paid

28   contribution in December 2018.  Motion for Default Judgment ("Mot.") [Dkt. No. 23] 1.  Plaintiffs

also seek $9,940.50 in attorneys' fees and $1,999.19 in costs. *Id.* CER has not filed an opposition to the motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted). Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. 54(c).

## DISCUSSION

## I.    JURISDICTION

When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 (granting labor union organizations power to sue employers in federal court) and 29 U.S.C. § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). Personal

1    jurisdiction also exists over CER, a California corporation and employer by virtue of ERISA §

2    3(5), 29 U.S.C. § 1002(5).  Compl. ¶ 2.  "ERISA Plaintiffs' Trust Funds are administered in this

3    district at their principal place of business in San Ramon, California."  *Id.* ¶ 6.

## II.    SERVICE OF PROCESS

5          Federal Rule of Civil Procedure 4(e)(1) allows for service following state law for serving a

6    summons in the state where the district court is located.  California law provides that a defendant

7    "may be served by leaving a copy of the summons and complaint during usual office hours in his

8    or her office or, if no physical address is known, at his or her usual mailing address, other than a

9    United States Postal Service post office box, with the person who is apparently in charge thereof,

10   and by thereafter mailing a copy of the summons and complaint by first-class mail, postage

11   prepaid to the person to be served at the place where a copy of the summons and complaint were

12   left."  Cal. Civ. Proc. Code § 415.20(a).  "When service is effected by leaving a copy of the

13   summons and complaint at a mailing address, it shall be left with a person at least 18 years of age,

14   who shall be informed of the contents thereof."  *Id.*  Service of a summons in this manner is

15   deemed complete on the tenth day after the mailing.  *Id.*  California's statutes governing substitute

16   service "shall be liberally construed to effectuate service and uphold jurisdiction if actual notice

17   has been received by the defendant[.]"  *Ellard v. Conway*, 94 Cal. App. 4th 540, 544 (2001)

18   (internal quotation marks and citation omitted).

19          Substitute service on CER was proper.  CER's business address was not an office, but

20   rather a private post office box rental store.  *See* Proof of Service [Dkt. No. 13].  Plaintiffs'

21   process server left the document with the mail store manager and thereafter mailed the documents

22   to the same address by first class, postage prepaid mail.  *Id.*; *see Ellard*, 94 Cal. App. 4th at 547

23   (substitute service on defendant's "usual mailing address, their private/commercial post office

24   box, was proper"); *Hearn v. Howard*, 177 Cal. App. 4th 1193, 1203 (2009) ("The purpose of

25   section 415.20 was achieved by service on the clerk at the post office box store where appellant

26   rented a post office box.").

27          The California Court of Appeal in *Ellard* distinguished *Bonita Packing Co. v. O'Sullivan*,

28   165 F.R.D. 610, 614 (C.D. Cal. 1995), which held that substituted service at a private post office

United States District Court
Northern District of California

box was improper because a better method could have been employed by serving the defendant's attorney in accordance with federal law. *Ellard*, 94 Cal. App. 4th at 546. Here, plaintiffs' counsel contacted CER's counsel prior to pursuing litigation to try to resolve the matter. *See* Declaration of M. Misner in Support of Motion for Default Judgment ("Misner Decl.") [Dkt. No. 24], Ex. A (email exchange with attorney William C. Last). When this case was ultimately filed, plaintiffs' counsel advised CER's counsel that the lawsuit had been filed and asked if he would accept service. *Id.* CER's counsel responded that he was not authorized to make a settlement offer and was not willing to accept service. *Id.* Thus, there is no indication that a better method of service was available to plaintiffs. CER had actual notice that this case had been filed.

## III.   *EITEL* FACTORS

### A.   Factor One: Possibility of Prejudice to Plaintiffs

The first *Eitel* factor considers whether plaintiffs will suffer prejudice if I deny their motion. If relief is not granted, plaintiffs would be unable to recover the plan contributions or otherwise enforce the Bargaining Agreement against CER. This potential prejudice to plaintiffs weighs in favor of granting a default judgment.

### B.   Factors Two and Three: Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors consider the merits and sufficiency of plaintiffs' claims. These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover. With the exception of facts relating to damages, courts must take as true all other factual allegations pleaded in the complaint. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). "ERISA requires employers to contribute to employee benefit plans in accordance with the terms of collectively bargained agreements." *Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc*., 572 F.3d 771, 774 (9th Cir. 2009) (citing 29 U.S.C. § 1145). When a benefit plan wins a judgment in an action to enforce payment of contributions to a benefit plan, ERISA provides that the plan is entitled to the unpaid contributions, interest thereon, liquidated damages, and reasonable attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(2).

United States District Court
Northern District of California

1    The Complaint states cognizable claims for relief.  Plaintiffs' Trust Funds are multi-

2  employer benefit plans as defined by ERISA, 29 U.S.C. § 1002(37)(A).  Compl. ¶¶ 1, 6.  Plaintiffs

3  Board of Trustees are the named fiduciaries of the Trust Funds under ERISA, 29 U.S.C. § 1002(a).

4  *Id.* ¶ 1.  Plaintiffs allege that CER failed to pay required contributions on time in December 2018

5  and failed to pay at all in October 2018 and November 2018.  *Id.* ¶¶ 13–15.  Pursuant to the terms

6  of the Bargaining Agreement, the Trust Agreements, and ERISA, 28 U.S.C. § 1132(g)(2), CER is

7  liable for the unpaid contributions, liquidated damages, interest, and reasonable attorneys' fees and

8  costs.  *Id.* ¶¶ 16–23.

9    Taking the allegations in the Complaint as true, and as supported by evidence, plaintiffs

10  have made a strong showing of likelihood of success on the merits.  The second and third *Eitel*

11  factors weigh in favor of granting a default judgment.

12    **C.    Factor Four: The Sum of Money at Stake in the Action**

13    Under the fourth *Eitel* factor, courts consider the amount of money at stake in the

14  litigation.  *Eitel*, 782 F.2d at 1472.  Default judgment is discouraged when the amount is

15  unreasonable in light of the allegations in the complaint.  *Id.*

16    In their motion for default judgment, plaintiffs seek (i) interest and liquidated damages

17  totaling $100.15 for late contributions; (ii) unpaid contributions of $23,941.79, along with

18  $9,571.03 in interest and liquidated damages, for contributions which CER reported but did not

19  pay; and (iii) attorneys' fees and costs in the amount of $11,939.69.  The total amount sought is

20  $45,552.66.

21    As discussed below, plaintiffs demonstrate with supporting evidence that they are entitled

22  to these amounts.  The amount of damages at stake is appropriate and reasonable and are

23  authorized under 29 U.S.C. § 1132, as well as the Bargaining Agreement and Trust Agreements.

24  *See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875

25  F.2d 212, 215 (9th Cir. 1989); *Northwest Administrators, Inc. v. Albertsons, Inc.*, 104 F.3d 253,

26  257–58 (9th Cir. 1996).  The fourth *Eitel* factor weighs in favor of granting a default judgment.

27    **D.    Factor Five: The Possibility of a Factual Dispute**

28    The fifth *Eitel* factor considers the possibility that materials facts are disputed.  *Eitel*, 782

F.2d at 1471–72.  Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint.  *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir.2007) (citing Fed. R. Civ. P. 55(a)).  Here, plaintiffs properly effected service of process on CER and CER was given ample opportunity to respond to the Complaint and participate in the proceedings.  CER's "obligations under the collective bargaining agreement are clear," and "the possibility for any factual disputes is unlikely."  *Bd. of Trustees of U.A. Loc. No. 159 Health & Welfare Tr. Fund v. RT/DT, Inc.*, No. C 12-05111 JSW, 2013 WL 2237871, at *6 (N.D. Cal. May 21, 2013).  The fifth *Eitel* factor weighs in favor of granting a default judgment.

### E.    Factor Six: Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect.  *Eitel*, 782 F.2d at 1472.  As discussed above, CER was properly served with the summons and Complaint.  CER's counsel was aware of this action as evidenced by the email exchanges between plaintiffs' counsel and CER's counsel before this action was filed.  *See* Minser Decl., Ex. A.  There is no indication that CER's failure to defend the litigation is the result of excusable neglect.  This factor weighs in favor of granting a default judgment.

### F.    Factor Seven: Policy Favoring Decision on the Merits

Cases should be decided upon their merits whenever reasonably possible.  *See Eitel*, 782 F.2d at 1472.  However, "this preference, standing alone, is not dispositive."  *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citation omitted); *see also* Fed. R. Civ. P. 55(b) (providing that the "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").  Because CER has not participated in the proceedings, a decision on the merits would not otherwise be possible.  In this situation, Rule 55(b) permits me to grant default judgment.

In sum, the *Eitel* factors weigh in favor of granting plaintiffs' motion for default judgment.

## IV.    RELIEF SOUGHT

Once liability is established through a defendant's default, a plaintiff is required to establish that the requested relief is appropriate.  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

United States District Court
Northern District of California

### A.      Unpaid Contributions

In an action to recover unpaid contributions pursuant to 29 U.S.C. § 1132, the court shall award unpaid contributions, interest, and liquidated damages. 29 U.S.C. § 1132(g)(2)(A-C). Liquidated damages are equal to the interest on the unpaid contributions or the contract liquidated damages rate, whichever is greater. *Id.* § 1132(g)(2)(C). Section 1132(g)(2) is "mandatory" when the following three requirements are met: "(1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers*, 875 F.2d at 215; *Northwest Administrators*, 104 F.3d at 257. Plaintiffs have satisfied these factors because CER was delinquent in its contributions at the time this action was filed, the Bargaining Agreement provides for assessment of liquidated damages, and, by virtue of this order, plaintiffs will obtain a judgment against CER.

Under the Bargaining and Trust Agreements, and reiterated in the Trust Funds' Collection Procedure Guidelines, liquidated damages are assessed at 5% of unpaid contributions, with a minimum of $100.00, on contributions received after the 22nd day of the month following the month worked, plus 10% interest per annum (calculated from the delinquency date until paid). In addition, if contributions are not paid by the 22nd day of the month following the month in which they were due, liquidated damages increase to 20% of contributions, with a minimum of $100.00. *See* Bargaining Agreement at Addendum No. 1, Item 5, Section F (incorporating the terms of the Trust Agreements into the Bargaining Agreement); Trust Agreement at section III.D and III.F; Collection Procedure Guidelines at section II.C.

Plaintiffs allege and demonstrate with supporting evidence that CER failed to pay its self-reported contributions to the Trust Funds for the months of October 2018 and November 2018, in the total amount of $23,941.79. *See* Guzman Decl. ¶ 7. They further allege and demonstrate with supporting evidence that CER owes $4,782.68 in interest (calculated at 10% per annum interest accrued through November 24, 2020) and $4,788.35 in liquidated damages (calculated at the rate of 20%). *Id.* Accordingly, plaintiffs have sufficiently demonstrated that they are entitled to a total amount of $33,512.82 in unpaid contributions, interest, and liquidated damages.

### 1.    Interest Accrued Through the Entry of Judgment and Post-Judgment Interest

In their proposed judgment, in addition to the amounts discussed above, plaintiffs state that: "Interest shall continue to accrue at the rate of 10.0% per annum on the principal unpaid contributions from November 25, 2020 through entry of Judgment.  Post-judgment interest shall continue to accrue at the rate of 10.0% per annum on the principal unpaid contributions ($23,941.79) and at the legal rate on the entire Judgment ($38,644.97) until satisfied."  Proposed Judgment [Dkt. No. 23-1].  Plaintiffs fail to fully address this point in their motion for default judgment and only mention in passing that "[i]nterest continues to accrue on the unpaid contributions until the contributions have been paid in full."  Mot. 4 (quoting Guzman Decl. ¶7).

Plaintiffs who seek interest through the date of judgment typically provide a daily rate to assist in calculating the interest.  Plaintiffs have not done so here.  At this time, I will not address what daily rate interest has continued to accrue between November 25, 2020 through the entry of judgment, but plaintiffs are not precluded from seeking such interest after judgment is entered.

I will also not address whether plaintiffs are entitled to post-judgment interest, and if so, the amount.  If plaintiffs choose to seek post-judgment interest after judgment is entered, they must set forth the authority and evidence that would support such a finding.  *See U.A. Loc. 342 Joint Lab. - Mgmt. Comm. v. Airteks Mech. Servs., Inc.*, No. C-04-2531 SBA (WDB), 2006 WL 8460256, at *10 (N.D. Cal. Jan. 19, 2006), *report and recommendation adopted,* 2006 WL 8460257 (N.D. Cal. Feb. 8, 2006) (plaintiffs who "opted not to pursue post-judgment interest" at the time of judgment "[did] not waive their right to seek post-judgment interest at a later date"); *see also Crosthwaite v. Tim Kruse Constr., Inc,* No. C 13-00496 JSW, 2014 WL 4683719, at *7 (N.D. Cal. Sept. 17, 2014) (finding "the post-judgment interest rate applicable in this action should be the rate governed by 28 U.S.C.1961(a), not the 10% interest rate applicable to delinquencies" where plaintiffs relied upon contractual provisions that "do not expressly state that the parties agree to a specified post-judgment interest rate, nor expressly state that the parties agree to contract around 28 U.S.C. § 1961(a)").

### B.    Late Contributions

Plaintiffs allege that CER's December 2018 contribution payment in the total amount of

United States District Court
Northern District of California

1    $558.40 was received one day late, on January 23, 2019.  Guzman Decl. ¶ 8.  Liquidated damages

2    on contributions paid before the lawsuit is filed, are permitted under federal common law pursuant

3    to a contract when: (1) "the harm caused by a breach [is] very difficult or impossible to estimate,"

4    and (2) "the amount fixed [is] a reasonable forecast of just compensation for the harm caused."

5    *Idaho Plumbers*, 875 F.2d at 217.

6         Where, as here, "an employer is delinquent in paying contributions into a fringe benefit

7    trust fund, the fund suffers some kinds of harms that are very difficult to gauge."  *Bd. of Trustees*

8    *v. Udovch*, 771 F. Supp. 1044, 1049 (N.D. Cal. 1991); *Trustees of Bricklayers Loc. No. 3 Pension*

9    *Tr. v. Huddleston*, No. 10-1708 JSC, 2013 WL 2181532, at *6 (N.D. Cal. May 20, 2013).  "To

10   determine whether the parties reasonably forecasted the compensation for breach, courts look to

11   the parties' intentions and a good faith effort to determine the amount of damages."  *Bd. of*

12   *Trustees of Laborers Health & Welfare Tr. Fund for N. California v. Lopez*, No. 18-CV-00809-

13   DMR, 2019 WL 2183376, at *7 (N.D. Cal. Jan. 21, 2019), *report and recommendation adopted,*

14   2019 WL 2183366 (N.D. Cal. Feb. 11, 2019) (citing *Idaho Plumbers*, 875 F.2d at 217).  The

15   parties' intentions determine whether the second requirement has been satisfied.  "They must have

16   made a 'good faith effort to set an amount equivalent to the damages they anticipate.'"

17   *Huddleston*, 2013 WL 2181532, at *6 (quoting *Udovch*, 771 F. Supp. at 1048).

18        The Bargaining Agreement states: "It would be extremely difficult and impractical to fix

19   the actual expense and damage to the Trust resulting from any Employer's default, over and above

20   attorney's fees for each Employer's default."  *See* Bargaining Agreement at section III.D.  By

21   signing the agreement, CER agreed to pay "Liquidated Damages of 5% of the total contributions

22   within a minimum charge of $100.00 plus 10% interest per annum calculated from the due date, if

23   received by the 20th of the month following the month originally due."  *Id.*

24        Pursuant to the Bargaining and Trust Agreements, and reiterated in the Collection

25   Procedure Guidelines discussed above, 5% liquidated damages and 10% interest were assessed on

26   CER's late December 2018 contribution payment in the total amount of $558.40.  Because 5% of

27   the total contributions for December 2018 equates to $27.97, plaintiffs seek liquidated damages at

28   the minimum amount of $100.00.  They seek interest in the amount of $0.15 (calculated at 10%

per annum interest accrued through January 23, 2019).  Werner Decl. ¶ 8.  Plaintiffs have

sufficiently demonstrated that they are entitled to $100.15 in liquidated damages and interest on

the late contribution payment.

### C.    Attorneys' Fees and Costs

A plaintiff who obtains a judgment for an ERISA claim under 29 U.S.C. § 1145 for unpaid

contributions is entitled to "reasonable attorney's fees and costs of the action, to be paid by the

defendant[.]"  29 U.S.C. § 1132(g)(2)(D).  The Trust Agreement here also provide that CER must

reimburse plaintiffs for attorneys' fees, audit fees, costs, and all other expenses incurred in

connection with the collection of delinquent contributions.  *See* Trust Agreement at section III.G

(section on collection actions stating that "The Employer shall reimburse the Trust, or its assignee,

for all reasonable attorneys' fees, audit fees, court costs, investigator fees, collection agency fees,

and all other reasonable expenses of whatever nature incurred in connection with such suit or

claim").

Plaintiffs' counsel request attorneys' fees in the amount of $9,940.50, representing 55.4

hours of work billed (33.4 hours by attorneys and 22 hours by paralegals) between December 11,

2018 through January 31, 2021.  Misner Decl. ¶ 15.  Plaintiffs have provided timesheets showing

the time spent and tasks performed by each of the four attorneys and one paralegal (Misner at

$215 an hour; Stafford at $220 an hour; Mendoza at $215 an hour; Schechter at $215 an hour; and

Cotterill at $125 an hour) and have described in a declaration their level of experience and

education.  *Id.* ¶¶ 9(a)–(e); *id.*, Ex. B (billing records).

I find that the hours expended are reasonable, and that the hourly rates charged are

reasonable rates for ERISA claims.  *See Sheet Metal Workers Loc. 104 Health Care Tr. v. Nichols

Plumbing & Heating, Inc.*, No. 15-CV-04260-KAW, 2016 WL 8313928, at *9 (N.D. Cal. Dec. 19,

2016), *report and recommendation adopted,* 2017 WL 713144 (N.D. Cal. Feb. 23, 2017) (finding

130.5 hours of work reasonable because "[t]he hours include work performed over a period of

more than two years, including time spent compelling Defendants to comply with their obligations

under the Bargaining and Trust Agreements, such as the submission to an audit").  Plaintiffs'

attorneys' hourly rates, including paralegal hourly rates, have been found reasonable by other

United States District Court
Northern District of California

1   judges in this District.  *See, e.g.*, *Operating Engineers Health & Welfare Tr. Fund for N.*

2   *California v. Kino Aggregates, Inc.*, No. 16-CV-02795-HSG-DMR, 2017 WL 743658, at *8 (N.D.

3   Cal. Jan. 30, 2017), *report and recommendation adopted,* 2017 WL 733092 (N.D. Cal. Feb. 24,

4   2017);

5          Plaintiffs submit that they have incurred $1,999.19 in costs in this action.  Misner Decl. ¶

6   16.  These costs include the Complaint filing fee, messenger service for the summons and the

7   Complaint, legal research fees and investigative fees.  *Id.*  These costs are reasonable.  Courts have

8   routinely awarded costs for service, messenger services, and investigatory fees in actions brought

9   under 29 U.S.C. § 1132 (g)(2)(D). *See, e.g.*, *Nichols Plumbing & Heating*, 2016 WL 8313928, at

10  *9 (finding $400 filing fee, $258.45 messenger service, and $1,035.00 investigative fees

11  reasonable); *Pension Plan for Pension Trust Fund for Operating Eng'rs v. J & K Sweeping*, No. C

12  14-1179 CW, 2014 WL 4626008, at *8 (N.D. Cal. Sept. 15, 2014) ("With respect to Plaintiffs'

13  request for costs for messenger service, legal research, and investigation, such costs are available

14  on the basis that they are generally billed as attorneys' fees.").

15                                            **CONCLUSION**

16         Plaintiffs' motion for default judgment is GRANTED.  Plaintiffs are entitled to $33,612.97

17  in damages and $11,939.69 in reasonable attorneys' fees and costs.  As stated above, plaintiffs are

18  not precluded from seeking, at a later date, additional interest accrued on the principal unpaid

19  contributions from November 25, 2020 through entry of judgment and any post-judgment interest.

20         **IT IS SO ORDERED.**

21  Dated: April 9, 2021

22

23

24                                            William H. Orrick
                                              United States District Judge
25

26

27

28

*United States District Court*
*Northern District of California*

13